1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          )     Criminal No. 07-CR-0036-L
                                       )
12              Plaintiff,             )     **ORDER FOLLOWING BENCH**
                                       )     **TRIAL**
13  v.                                 )
                                       )
14  FRANCISCA CELAYA-LOPEZ,            )
                                       )
15              Defendant.             )
                                       )
16  _____   )

17        A bench trial was held in this matter on August 28 and 29, 2007.  Having considered the

18  testimony and evidence presented, the Court issues the following ruling.

19        Defendant Francisca Celaya-Lopez is charged by indictment with one count of

20  Importation of Marijuana in violation of 21 U.S.C. §§ 952 and 960 and one count of Possession

21  of Marijuana with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1).  Based upon the

22  evidence presented at trial, the Court finds the Government has established each element of the

23  charged offenses beyond a reasonable doubt.  The evidence established that Defendant was

24  arrested on October 13, 2006 attempting to cross the border at the Calexico, California Port of

25  Entry driving a vehicle containing  33.80 kilograms of marijuana.  Defendant admitted

26  knowledge of the presence of drugs within the vehicle, and knew she was to deliver the vehicle

27  to a location within the United States.

28        Indeed, the underlying elements of the charged offenses were largely undisputed at trial;

07cr0036

1  Defendant's case rested upon the defense that she committed the crimes under duress.  In

2  deciding the duress issue, the Court has relied on the testimony of the defendant, the video of

3  Defendant's post-arrest interrogation by agents, and the trial exhibits.

4      Defendant contends that threats occurred over a period of several years, culminating in a

5  threat to Defendant and her family at the time she crossed the border with the drugs.  In

6  September 2005, Defendant's boyfriend Francisco, who is younger than Defendant, took

7  Defendant to his grandmother's ranch in Mexico and allegedly tortured Defendant for a day and

8  one half.  This apparently led to Defendant suffering a cardiac arrest which lead to an operation

9  and a stroke.  However, Defendant testified that the reason for Francisco's abuse was not related

10  to drugs, but was because Francisco believed Defendant had been unfaithful to him.  Defendant

11  testified that while she was at the ranch in 2005, she became aware that Francisco`s cousins, five

12  brothers, were involved in drug smuggling.  Francisco pressured Defendant to drive drugs across

13  the border for his cousins, but she refused.

14      Defendant's operation and stroke occurred in October 2005.  During her recuperation,

15  Defendant contacted Francisco notwithstanding the fact he allegedly, in her own words, tortured

16  her for one and one half days.  On September 1, 2006, Defendant went to Mexicali to visit her

17  daughter and according to her testimony was "taken by force" by Francisco in her vehicle.  She

18  claimed she had a gun placed to her head and was driven a distance to a small town where she

19  jumped out at a stop sign and informed the police.  The police arrested Francisco and he was

20  convicted and sent to jail.  However, Defendant presented a somewhat inconsistent version of

21  events to Bruce Yanofsky, a Clinical and Forensic Psychologist.  Defendant told Dr. Yanofsky

22  that she voluntarily accompanied Francisco after he saw her driving from her home to a local

23  store.  According to Dr. Yanofsky's report, Defendant claimed Francisco convinced her to get

24  into his vehicle so he could show her a home he had bought for her.  Defendant told Dr.

25  Yanofsky that despite being afraid, she went along because she did not want her family to know

26  of her relationship with Francisco.   In any event, Francisco was arrested after Defendant called

27  to the Mexican police and he is still in jail.

28      During the kidnapping, Defendant became aware that Francisco had accepted money

07cr0036

1  from his cousins to have drugs smuggled over the border and that Francisco apparently had

2  promised his cousins that Defendant would be the driver.  Francisco allegedly pressured

3  Defendant to comply with his wishes that she cross the drugs over the border by threatening her.

4  Francisco`s cousins were pressuring him because the money had allegedly been paid

5  After the incarceration of Francisco, a young cousin named Christian allegedly continued

6  to threaten the Defendant and members of her family, claiming that Defendant "had the job that

7  had been paid for."  Defendant testified she assured the cousin she would cross the border and

8  take care of it because Francisco had already been given the money and she did not have the

9  money to pay it back.

10  To prevail under a duress theory, the defendant must establish the following elements by

11  a preponderance of evidence:  (1) an immediate threat of death or serious bodily injury, (2) a

12  well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to

13  escape the threatened harm.  *United States v. Verduzco*, 373 F.3rd 1022, 1030 (9th Cir. 2004).

14  The standard for reasonableness is to be determined by what a reasonable person would do under

15  the same or similar circumstances.  *Id.*

16  The evidence presented with respect to the threats made to Defendant doesn't really

17  explain why Defendant would have been such a critical cog in the drug smuggling venture,

18  particularly when drug smugglers do not seem to have much difficulty recruiting couriers.

19  Defendant did not receive the advance payment and was nothing more than the girlfriend of

20  Francisco.  However, an inference can be drawn that because Defendant was responsible for

21  Francisco's incarceration and he was paid the money, the responsibility was therefore seen as

22  Defendant's responsibility.

23  In weighing the evidence, the Court notes that several factors weigh against a finding that

24  the threats made to Defendant were sufficient to satisfy the first two prongs of the duress

25  defense.  First of all, the threats were made over such a long time span that it is difficult to

26  discern that Defendant was ever placed in any immediate harm of death of serious bodily injury.

27  According to Defendant, the threats began with Francisco until he was incarcerated, then were

28  carried out by Christian, the cousin.  Overall, the threats in one form or another ran from the time

07cr0036

1  Defendant was allegedly tortured in September, 2005 to the date of offense on October 13, 2006.

2  It should be noted that, although Defendant testified to the alleged torture, the medical records at

3  the hospital placed into evidence did not note any bruises or lacerations.

4       Furthermore, during rehabilitation from her stroke and heart surgery, Defendant initiated

5  contact with Francisco by giving him her telephone number even though he was allegedly

6  responsible for her condition by the abuse she took at his grandmother's ranch in Mexico.

7  Defendant had the ability to avoid all contact with Francisco as she had moved from her

8  residence to some apartments for the purpose of rehabilitation, all within the United States.   If

9  Defendant were truly in fear of imminent harm, it is not logical that she would voluntarily give

10 her number to Francisco at the time of her rehabilitation.

11      In addition, Defendant never told her children they were in danger.  Defendant told the

12 investigating agents and testified at trial that she was embarrassed to tell her children of the

13 situation because of her relationship with Francisco.  The Court must consider whether it is

14 reasonable that Defendant would not have warned her children, two of whom live in Mexico, if

15 she were truly concerned for their safety.  Or is it more likely that Defendant smuggled the drugs

16 primarily to avoid telling her five children because of her embarrassment over her relationship

17 with a younger man, as she testified at trial?

18      Also, Defendant told the investigating agents on video tape that she was to be paid

19 $1,500 to deliver the drugs.  This is inconsistent with the her statement to her psychologist that

20 Francisco had already been paid $5,000 to deliver the drugs, and her trial testimony that she

21 delivered the drugs because she was afraid because the delivery had already been paid for.

22 Although Defendant indicated in her testimony that she lied to the agents about the $1,500, the

23 video was clear and no impression could be drawn that she was lying when she told the agents

24 she was to be paid.  It is difficult to believe that experienced drug smugglers would pay a person

25 $1,500 to deliver drugs, and intimidate them with threats of death or great bodily injury, when

26 $5,000 had already been paid for the delivery.

27      Thus, if the Court is to believe Defendant's testimony that she was in fear of her life or

28 serious bodily injury and in fear of her children`s safety, it must do so despite the existence of

1  several inconsistencies in her testimony.  There is no question that Francisco either kidnapped

2  Defendant by force or convinced her to let him in her vehicle on false promises depending on

3  which version of Defendant's statements one is to believe.  This led to Francisco's arrest.

4  However, the exhibit placed into evidence by the defense indicates the dispute was over

5  romantic issues, not drugs.  Likewise, the alleged abuse suffered by Defendant in September

6  2005, according to Defendant's testimony, was because of romantic issues, not drugs.

7  Moreover, the medical records show no injury from Francisco during the first incident in

8  September 2005, other than the heart problems and stroke Defendant maintains occurred as a

9  result.  In addition, as previously stated, Defendant gave Francisco her number to stay in contact

10 after this alleged abuse.

11      For the reasons outlined above, the Court is doubtful that the threats made in this case rise

12 to the level of immediate harm and the resultant well-grounded fear necessary to establish the

13 first two prongs of the duress defense.  While five brothers involved in an international drug

14 smuggling operation would likely be in a position to inflict death or serious physical injury

15 should they decide to do so, it is somewhat implausible that such harm would be the penalty for

16 a third party over a relatively small quantity of marijuana.  Notwithstanding this speculation,

17 however, the Court need not rule on the first two elements of the duress defense because

18 Defendant clearly has failed to meet her burden of proof with respect to the third element of the

19 defense.

20      The third element of the duress defense requires proof that the defendant had no

21 reasonable opportunity to escape the threatened harm.  It appears from the testimony and

22 exhibits that Defendant's actual participation in the drug smuggling venture began on September

23 21, 2006, when she went with one of the brothers to register the load car.  This took place

24 approximately twenty days after the arrest of Francisco, and twenty-two days before the

25 Defendant's arrest on October 13, 2006.

26      Thus, Defendant was aware by at least September 21, 2006, when she registered the

27 vehicle, that she was to be engaged in the smuggling of the marijuana.  The vehicle was

28 registered in the United States, Defendant lived in the United States, and three of her children

07cr0036

1  live in the United States.  Defendant was arrested twenty-two days after she first knew she
2  would be taking drugs over the border.  Even if Defendant was threatened that harm would come
3  to her if she did not register the vehicle for the purpose of smuggling, she had twenty-two days
4  to act before the actual smuggling, which provided Defendant ample opportunity to report the
5  incident and escape the threatened harm.  Even though two of Defendant's children live in
6  Mexico, there is no reason she couldn't have reported any threats to their safety to the Mexican
7  authorities.  Defendant reported Francisco`s kidnapping to the Mexican Police and he was
8  arrested and convicted.

9        In analyzing whether there is a reasonable opportunity to escape threatened harm, the
10  Court is required to look to what a reasonable person would do under the same or similar
11  circumstances.  *Id.*  Here, Defendant did not present evidence of why she could not have escaped
12  the threatened harm between the time of the vehicle registration and the offense except to say the
13  brothers could cross the border into the United States and she did not want to be embarrassed by
14  telling her children of her situation. This is not reasonable under an objective analysis.
15  Considering the long time frame during which Defendant was being pressured and threatened,
16  from September 2005 to October 13, 2006, there was ample opportunity for Defendant to have
17  escaped the alleged threats.  It is even more clear that between the overt act of registering the
18  vehicle and the actual drug smuggling event, the Defendant had a reasonable opportunity to
19  escape any threatened harm.  Thus, based on all the facts in evidence and the law, the Court
20  finds that Defendant has not met her burden of meeting the requirements of duress by showing
21  by a preponderance of evidence a lack of reasonable opportunity to escape the threatened harm.
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

07cr0036

1

**Conclusion**

2          The Court finds Defendant has failed to meet her burden of establishing that she

3   committed the offenses alleged in the Indictment while acting under duress.  As such, the Court

4   finds Defendant Guilty of Counts One and Two of the Indictment.  Defendant is referred to the

5   Probation Department for preparation of a Presentence Report.  Sentencing with Probation

6   Office Report shall take place on **December 3, 2007** at **8:30 a.m.**

7          **IT IS SO ORDERED**.

8

9   DATED:  September 7, 2007

10                                                            _____

11                                                            M. James Lorenz
                                                             United States District Court Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cr0036